IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LAVETA THOMAS**                                                                          **PLAINTIFF**

**V.**                                                                **CIV. NO. 3:16-CR-559-HTW-LRA**

**MISSISSIPPI DEPARTMENT OF HEALTH**                            **DEFENDANT**

## ORDER DENYING SUMMARY JUDGMENT

Before this court is the motion of the Defendant, Mississippi Department of Health, for Summary Judgment [doc. no. 29]. The Plaintiff, Laveta Thomas, opposes the motion and has filed a response in opposition. [doc. no 31]. This litigation is an employment discrimination case brought by Plaintiff under Title VII of the Civil Rights Act of 1964,[1] (hereafter "Title VII") and the Age Discrimination in Employment Act (hereafter "ADEA").[2] Defendant, at this appropriate pleading stage, contends this litigation, now beyond discovery, should proceed no longer, and under the rubric of Rule 56, Fed. R. Civ. Proc. must be dismissed in its entirety. This court disagrees and explains below.

FACTUAL BACKGROUND

Plaintiff Laveta Thomas ("hereafter "Thomas") is an African American female over the age of forty, who has been employed with the Mississippi Department of Health (hereafter "MDH") as a Division Director since December of 2008. In 2015, she was employed in the

---

[1] Title VII is codified as 42 U.S.C. § 2000e, et seq. Title VII of the Civil Rights Act of 1964 prohibits employers (who employ 15 or more people) from discriminating against employees on the basis of sex, race, color, national origin, and religion.

[2] The Age Discrimination in Employment Act of 1967 (ADEA) is codified as 29 U.S.C. § 621 et seq. The ADEA makes it unlawful for an employer to take adverse action against an employee "because of such individual's age." *Gross v. FBL Financial Services, Inc.* 557 U.S. 157 (2009).

Office of Emergency Planning and Response (hereafter "OEPR") within the Department of Health.  While there, Thomas applied for two positions with the agency in 2015 - Bureau Director I and Bureau Director II.  She was not interviewed for the Bureau Director I position.  She was interviewed for the Bureau Director II position.  She was not selected for either position.

Thomas contends that Robert Boxx (hereafter "Boxx"), a white male who is younger than Plaintiff, was selected for the Bureau Director II position and that Charles Minninger (hereafter "Minninger"), also a white male, whose age was not specified, was selected for the Bureau Director I position.  On September 8, 2015, Thomas filed a grievance with the State Personnel Board, claiming: (1) that those in charge of the selection process had discriminated against her in the promotion process because of her race, sex and age; (2) that a distinct pattern of discrimination in hiring and promotion practices exists within the OEPR; (3) that the discriminatory pattern includes subjective hiring nuances and the practice of hiring Caucasian friends and family; and (4) that no African-American person or minority race employee now serves, or has ever served, in a position of power within the Department.

In response to Thomas' grievance, MDH says that neither Boxx nor Minninger was permanently placed in his respective new position, and that MDH plans to start anew the process of filling the positions.  This alleged planned course of action, says Thomas, is simply a discriminatory maneuver designed to circumvent the discriminatory practice, which birthed this development.

What is clear here is that Boxx and Minninger functioned in their respective interim roles for several months while awaiting the new selection process.   They received a level of pay above their former salaries, but did not receive the full pay increases they would have received had they been permanently promoted.

Boxx's new interim duties included supervising Thomas, who steadfastly maintained that Boxx's qualifications for the position were inferior to hers. This alignment, says Thomas, was awkward and posed a constant reminder of the discriminatory outcome.

The grievance procedure triggered by Thomas manifested progressive levels. In its third level response to her grievance,[3] MDH stated in a memo to Thomas, that the selection processes for the two disputed positions would be voided and that MDH would restart the selection process from scratch. A memo from Kathy Burk, Director of Health Services, stated, "the allegation that you were not selected for the position solely due to racial, color, sex and age discrimination cannot be substantiated". *Burk Memorandum.* [doc. no. 28-1 p. 2]. The relief Thomas sought of promotion and additional compensation was, therefore, denied; however, the memo added the following: "… there is anecdotal information to suggest that the processes used in these selections have the appearance of having been skewed to favor the candidates with preexisting personal relations with the OEPR Director."

Upon receipt of the letter, Thomas sent an email to Kathy Burk asking for clarification as to what was being done in response to Thomas' grievance. Burk responded, in part, as follows: "No candidates from the first selection process are being appointed to the Bureau Director I and Bureau Director II positions. The entire previous selection process will be voided and the hiring process for filling those positions will start from scratch."

---

[3] On September 8, 2015, Thomas filed a grievance with the State Personnel Board claiming that selection of the two candidates had been improper and that a pattern of racial discrimination in hiring and promotions existed within the OEPR. On September 11, 2015, Thomas received from the Director of Health Protection, a response stating that the best persons had been selected based on the reviews of the selection committee. Nevertheless, Kathy G. Burk, Director of Health Services, conducted her own investigation and determined that the selection process had the appearance of being skewed in favor of persons with personal relationships with the OEPR Director.

The positions were announced and the interview process began anew. Thomas did not apply for either of the two positions in this second round. The openings again were filled with two white males. One of those white males was one of the same persons who had been selected in the first selection process, namely Charles Minninger. *Deposition of Laveta Thomas* [doc. no. 28-2 p. 87].

LAW AND ANALYSIS

After filing a charge with the Equal Employment Opportunity Commission ("EEOC") and receiving the requisite "right to sue" letter,[4] Thomas filed her Complaint on July 14, 2016, in this federal court. She invokes subject matter jurisdiction under Title 28 § 1331, federal question jurisdiction.[5] She alleges race and sex discrimination as condemned by Title VII, and age discrimination in violation of the ADEA.

She was denied an interview for the Bureau Director I position, Thomas claims, with no reason being given. She asserts that all five candidates selected for interviews were white. Thomas also argues that Charles Minninger, who was awarded the position, was less qualified than she.

---

[4] A "right to sue letter" is a letter issued by the United States Department of Justice. The purpose of the letter is to inform the claimant who has made a charge of discrimination that the EEOC has completed its investigatory and/or conciliatory activities with regard to the claimant's charges; that the Department of Justice will not file a lawsuit on behalf of the claimant; and that the claimant has ninety days from receipt of the right to sue letter to file his/her own lawsuit. Receipt of the Right to Sue letter is a prerequisite to filing a lawsuit based on an EEOC Charge of Discrimination. See *Snider v. L-3 Commc'ns Vertex Aerospace, LLC, No*. 3:09-CV-704-HTW-LRA, 2016 WL 3648281, at *3 (S.D. Miss. Mar. 15, 2016)

[5] Title 28 U.S.C. §1331 states as follows:
**§1331. Federal Question.**
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Thomas was interviewed for the Bureau Director II position. Robert Boxx was promoted to that position, though Thomas contends she was better qualified than he as well.

Count One of her complaint alleges race discrimination under Title VII. Count Two alleges Sex discrimination under Title VII. Count Three alleges age discrimination under the ADEA. The selected candidates were white and male. Although Minninger was older, Boxx was younger than Thomas (late 40's)[6]. *Deposition of Laveta Thomas* [doc. no. 28-2 p. 60].

The *McDonnell Douglas* analysis established by the United States Supreme Court, set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). This analysis requires that a Title VII plaintiff must first establish a prima facie case of discrimination. *Id. at* 802-05 (1973). See also, *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (4th Cir. 2000).

To establish a prima facie case of discrimination, a plaintiff must show: (1) she is a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was not promoted; and (4) the position was filled by someone not in the protected class. Under Title VII, a protected class is a group defined by race, sex, color, national origin or religion. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089 (1981).

The ADEA, on the other hand, applies only to those over forty, 29 U.S.C. §631(a) (2012). "Applied for" means applied for an available position for which one was qualified," *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089 (1981); See also *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir. 1998) (merely asserting or requesting a

---

[6] Plaintiff's Complaint [doc. no.1 p.3] states: "Plaintiff was, indeed, denied these promotions based on her race, as both positions were filled by Caucasians (Robert Boxx and Charles Minninger); her sex, as both of the positions were filled by males; and her age, as the position of Bureau Director II was filled by a much younger male (Robert Boxx).

5

promotion during evaluations was not sufficient). "Qualified for the position" means objectively meeting the requirements for the job. See *Roy v. Crews,* No. 16-60588, 2017 WL 4679724, at *3 (5th Cir. Oct. 17, 2017) (Plaintiff not objectively qualified when she did not have five years' experience as required for the position).

Meeting the "prima facie" burden of proof serves the purpose of empowering a plaintiff to survive proof challenges at the pretrial motion stage, and a proof challenge at the conclusion of plaintiff's case-in-chief at trial. The burden of establishing a prima facie case is fact and law dependent. If, at this pretrial stage, a plaintiff establishes a prima facie case for discrimination, the burden then shifts back to the Defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). If a defendant meets that production burden, the burden then shifts back to the plaintiff to show that the employer's provided reason was but a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). *Reeves v. Sanderson Plumbing Products, Inc*. 530 U.S. 133 (2000) (applying McDonnell Douglas burden shifting framework to ADEA actions).

The ultimate burden of persuading the trier of fact that a Defendant intentionally discriminated against a Plaintiff remains at all times with a Plaintiff. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *McFall v. Gonzales,* 143 Fed Appx. 604, 607 (5th Cir. 2006). See also *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 881 (5th Cir.2003); *Pratt v. City Houston, Tex.,* 247 F.3d 601, 606 n. 2 (5th Cir.2001); *Jefferies v. Harris County Cmty. Ass'n,* 615 F.2d 1025, 1029 (5th Cir.1980). "Plaintiff must prove by a

preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981 inference of unlawful discrimination). This burden, too, looks to the facts and law, but whether that burden of persuasion has been satisfied, is a question for the trier of fact, that is, the jury, or a judge in a bench trial.

Thomas meets her prima facie burden herein as to the first requirement of the *McDonnell Douglas* analysis because she is a member of a protected class, namely that of African American. MDH asserts, however, that Thomas has not met her burden as to the second, third and fourth requirement of the prima facie analysis. She did not apply for the subject positions, says the Defendant, a circumstance which commensurately destroys her theory of a causal link between her protected status and her not obtaining either position. This oversight on her part, her failure to apply, says Defendant, also obviates any need for this court to examine the other factors under a prima facie analysis.

In support of its argument, MDH drafts into service *Stewart v. NCI Group, Inc.*, 2011 WL 310255, at *4 (S.D. Miss. 2011)(failure to recall plaintiff after a layoff was based on her inaction in not applying, not the conduct of defendant, precluding any finding of a causal link); see also *Valdez v. The Clorox Co.,* 1978 U.S. Dist. LEXIS 14930 (S.D. Tex. Oct. 17, 1978) (failure to indicate interest or apply for jobs that were denied to plaintiff was fatal to proving sex discrimination). Plaintiff does not bicker with these case decisions, nor with any cousin cases in the same family: *Bellard v. JPS Health Network,* 439 Fed.Appx. 392 2011 WL 3822277 (5th Cir. 2011) (not violative of ADEA to require older nurse to reapply for another positon after hers was eliminated). Plaintiff trumpets, instead, that MDH has crowned the wrong family of cases. The

peculiar facts here, says Plaintiff, are not related to the ancestral line of cases pressed into service by MDH. Reason? Because she earlier had applied and she was not required to apply for those jobs again she says, when MDH had rejected her, discriminatorily awarded those positions to others and allowed the chosen two to enjoy the fruits of a promotion, while simultaneously telling her that MDH would start the entire process over. She contends that her failure to reapply, at most, would only limit back wages for failure to mitigate, but would not completely bar her claim. Thomas argues that: [o]nce an employer takes a tangible employment action that is discriminatory in nature, the employer cannot back track and avoid liability." *Plaintiffs Brief* [doc. no. 31 p. 3]. In the instant case, she claims, the Defendant was caught in discrimination and tried to declare a "do over" to erase the possibility of liability, but a "do over" which left in place the discriminatory results of MDH's conduct.

So, the adverse employment action that Thomas here protests was the failure to promote her in the first selection process. Not only had the cause of action already accrued when she first was first denied the promotion, Thomas contends, but MDH's attempt to "do over" would not correct the discrimination that had taken place, since Minninger and Boxx were enjoying the fruits of MDH's discriminatory actions. Thomas says those persons serving on an interim basis had an advantage in the second selection process, due to having performed in the job for several months. Thomas even accuses the MDH of delaying the second selection process in order to allow those persons to accumulate more experience in the positions. MDH denies that those persons received any advantage for having performed the job during the interim period. This, though, is a material fact in dispute, one for the trier of fact to decide.

MDH emphasizes a purpose of Title VII: to promote conciliation, not litigation. See e.g., *Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct. 1645, 1651, 191 L. Ed. 2d 607 (2015) (In

attempting to bring discrimination to an end, Congress chose cooperation and voluntary compliance as the preferred means); See also *Ford Motor Co. v. EEOC,* 458 U.S. 219, 228, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982) (quoting *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). MDH argues that it embraced the spirit of Title VII and its actions should be applauded. Thomas chose not to re-apply for the positions when they were re-opened as a result of her grievance, choosing instead, says MDH, to file an EEOC charge and pursue litigation. To allow Thomas to proceed to trial under these circumstances, says MDH, would defeat a sainted purpose of Title VII.

This court disagrees and holds, instead, that this Defendant, under these circumstances, cannot shield itself from a full examination of its actions. This court is travelling under a Rule 56 motion for summary judgment. The pivotal question then, is whether under these special circumstances disputed issues of material fact are present. This court is persuaded that the answer is, yes. These disputed facts include the following:

1. If MDH can articulate a legitimate non-discriminatory reason for its actions, the issue remains whether that reason was a pretext for discrimination. (MDH, perhaps relying on the belief that Plaintiff had failed to state a prima facie case, has not stated its legitimate non-discriminatory reason for failing to promote Plaintiff);
2. Whether Thomas was more qualified than the persons chosen for the disputed positions the first time;
3. Whether MDH's actions were based on a discriminatory motive;
4. Whether MDH's alleged practices of skewing the selection process toward persons with interpersonal relationships with the Director, if proven, resulted in discrimination against Thomas;

5. Whether the second selection process was tainted by the first process and selections, if the first process and selections are found to have been discriminatory; and

6. Whether the persons selected after the first selection process received the benefit of the months of experience performing the job on an interim basis, for purposes of the second selection process.

## CONCLUSION

This court is persuaded that summary judgment is not appropriate in this case. Despite MDH's assertions to the contrary, Thomas has established a prima facie case of discrimination; yet MDH has not shown that it can meet its production burden of coming forward with a legitimate non-discriminatory reason for its employment action. Since this litigation features genuine disputes as to material facts, MDH is not entitled to summary judgment, a ruling previously announced from the bench. MDH's motion for summary judgment [doc. no. 29], therefore, must be denied.

SO ORDERED AND ADJUDGED, this the 6th day of March, 2018.

　　　　　　　　　　　　　　　　　　　　　　s/ HENRY T. WINGATE　　　　　
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE